Slip Op. 18-158

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SOLARWORLD AMERICAS, INC.,** | |
| **Plaintiff,** | |
| **SINO-AMERICAN SILICON PRODUCTS INC. and SOLARTECH ENERGY CORP.,** | |
| **Consolidated Plaintiffs,** | |
| **v.** | Before: Jennifer Choe-Groves, Judge |
| **UNITED STATES,** | Consol. Court No. 17-00208 |
| **Defendant,** | |
| **and** | |
| **MOTECH INDUSTRIES, INC., KYOCERA SOLAR, INC., and KYOCERA MEXICANA S.A. DE C.V.,** | |
| **Defendant-Intervenors.** | |

### OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's final results following an administrative review of the antidumping duty order on certain crystalline silicon photovoltaic products from Taiwan.]

Dated: November 13, 2018

Timothy C. Brightbill, Laura El-Sabaawi, and Usha Neelakantan, Wiley Rein, LLP, of Washington, D.C., for Plaintiff SolarWorld Americas, Inc.  Adam M. Teslik, Cynthia C. Galvez, Maureen E. Thorson, and Tessa V. Capeloto also appeared.

Robert G. Gosselink, Jarrod M. Goldfeder, and Jonathan M. Freed, Trade Pacific, PLLC, of Washington, D.C., for Consolidated Plaintiffs and Defendant-Intervenors Sino-American Silicon Products Inc. and Solartech Energy Corp. and Defendant-Intervenor Motech Industries, Inc.

Stephen C. Tosini, Senior Trial Counsel, and Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With them on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Reza Karamloo, Office of the Chief Counsel for Trade and Enforcement Compliance, U.S. Department of Commerce, of Washington, D.C.

James K. Horgan and Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, D.C., for Defendant-Intervenors Kyocera Solar, Inc. and Kyocera Mexicana S.A. de C.V.  Gregory S. Menegaz and John J. Kenkel also appeared.


Choe-Groves, Judge:  This case involves crystalline silicon photovoltaic products (typically, solar cells) from Taiwan.  The Department of Commerce ("Commerce" or "Department") conducted an administrative review of the antidumping duty order on crystalline silicon photovoltaic products, in which Commerce concluded that two producers, Sino-American Silicon Products Inc. ("SAS") and its affiliated entity Solartech Energy Corp. ("Solartech") (collectively, "SAS-Solartech"), and Motech Industries, Inc. ("Motech") sold the subject merchandise at prices below the normal value during the period of review.  See Certain Crystalline Silicon Photovoltaic Products from Taiwan, 82 Fed. Reg. 31,555 (Dep't Commerce July 7, 2017) (final results of antidumping duty administrative review; 2014–2016) ("Final Results"); see also Issues and Decision Memorandum for the Final Results of the 2014–2016 Administrative Review of the Antidumping Duty Order on Certain Crystalline Silicon Photovoltaic Products from Taiwan, A-583-853, (June 29, 2017), available at https://enforcement.trade.gov/frn/summary/taiwan/2017-14281-1.pdf (last visited Nov. 7, 2018) ("Final IDM").  This matter is before the court on the Rule 56.2 motion for judgment on the agency record filed by Plaintiff SolarWorld Americas, Inc. ("SolarWorld") and the Rule 56.2 motion for judgment on the agency record filed by SAS-Solartech challenging various aspects of the Department's Final Results.  See SolarWorld's Mot. J. Agency R., Feb. 27, 2018, ECF No.

51 ("SolarWorld's Motion"); Mem. Pl. SolarWorld Americas, Inc. Supp. Mot. J. Agency R.,

Feb. 28, 2018, ECF No. 57 ("SolarWorld's Br."); Consol. Pls.' Rule 56.2 Mot J. Agency R., Feb.

27, 2018, ECF No. 53 ("SAS-Solartech's Motion"); Mem. Supp. Rule 56.2 Mot. Consol. Pls. J.

Agency R., Feb. 27, 2018, ECF No. 55 ("SAS-Solartech's Br.").

## ISSUES PRESENTED

The court reviews the following issues:

1.  Whether Commerce properly adjusted Motech's reported per-unit costs when it
    declined to apply partial adverse facts available;

2.  Whether Commerce properly adjusted SAS-Solartech's reported costs for
    different grades of merchandise when it declined to apply partial adverse facts
    available; and

3.  Whether Commerce properly determined that all merchandise shipped by SAS
    during the period of review were United States sales.

## PROCEDURAL HISTORY

Commerce commenced an administrative review of the antidumping duty order on

crystalline silicon photovoltaic products from Taiwan on April 7, 2016 at the request of domestic

petitioners, including SolarWorld.  See Initiation of Antidumping and Countervailing Duty

Administrative Reviews, 81 Fed. Reg. 20,324 (Dep't Commerce Apr. 7, 2016).  The

administrative review covered 14 exporters of the subject merchandise, including mandatory

respondents Motech and SAS, which Commerce treated as one entity with Solartech.  See

Decision Memorandum for Preliminary Results of the 2014–2016 Antidumping Duty

Administrative Review of Certain Crystalline Silicon Photovoltaic Products from Taiwan, A-

583-853, (Feb. 28, 2017), <u>available at</u> https://enforcement.trade.gov/frn/summary/taiwan/2017-04413-1.pdf (last visited Nov. 7, 2018) ("Prelim. IDM").

Commerce published its preliminary results on March 7, 2017.  <u>See</u> <u>Certain Crystalline Silicon Photovoltaic Products from Taiwan</u>, 82 Fed. Reg. 12,802 (Dep't Commerce Mar. 7, 2017) (preliminary results of antidumping duty administrative review and partial rescission of antidumping duty administrative review; 2014–2016) ("<u>Prelim. Results</u>"); <u>see also</u> Prelim. IDM. The Department labeled Defendant-Intervenor Kyocera Mexicana S.A. de C.V. ("Kyocera") an "unexamined respondent" because it was subject to the administrative review, but was not a mandatory respondent.  Prelim. IDM at 5–6.  The Department concluded that sales of subject merchandise by SAS-Solartech and Motech were made below normal value.  <u>Id.</u> at 1.

Following the preliminary results, the Department received case briefs and rebuttal briefs from SolarWorld, SAS-Solartech, and Motech.  <u>See</u> Final IDM at 2.  Commerce issued its <u>Final Results</u> on June 29, 2017.  <u>See</u> <u>Final Results</u>.  The Department assigned a weighted-average dumping margin of 4.20 percent to Motech and 3.56 percent to SAS-Solartech.  <u>Id.</u> at 31,556. Non-selected companies such as Kyocera were assigned a rate of 4.10 percent.  <u>Id.</u>

Commerce adjusted the costs for both mandatory respondents.  <u>See</u> Final IDM at 23, 36. Commerce adjusted Motech's costs for grade B crystalline silicon photovoltaic products to reflect the full value of prime merchandise, and adjusted all grade Z merchandise to reflect the reduced value assigned by Motech in its books and records.  <u>Id.</u> at 36.  Commerce also adjusted SAS-Solartech's costs for its grade 4 non-prime crystalline silicon photovoltaic products to reflect their net realizable values because the market price of grade 4 merchandise was "considerably less" than production costs.  <u>Id.</u> at 25.

SolarWorld and SAS-Solartech initiated separate actions contesting Commerce's <u>Final</u> <u>Results</u>, which the court consolidated. <u>See</u> Order, Sept. 26, 2017, ECF No. 20. SolarWorld filed a Rule 56.2 motion for judgment on the agency record challenging Commerce's decisions not to apply partial adverse facts available ("AFA") to SAS-Solartech and Motech as unsupported by substantial evidence and otherwise contrary to law. <u>See</u> SolarWorld's Motion. Kyocera joined Defendant's opposition to SolarWorld's motion. <u>See</u> Statement of Kyocera Solar, Inc. and Kyocera Mexicana S.A. de C.V. Concurring Def.'s Opp'n Pl.'s Rule 56.2 Mot. J. Agency R., July 10, 2018, ECF No. 63. SAS-Solartech and Motech filed a joint response in opposition. <u>See</u> Resp. Def.-Intervenors SAS-Solartech and Motech to SolarWorld's Mot. J. Agency R., July 10, 2018, ECF No. 64. SolarWorld filed a reply brief. <u>See</u> Reply Br. Pl. SolarWorld, Aug. 8, 2018, ECF No. 75.

SAS-Solartech filed a Rule 56.2 motion for judgment on the agency record, contesting Commerce's decision to include in its margin calculation for the <u>Final Results</u> certain sales made via United States foreign trade zones ("FTZs") to Mexico. <u>See</u> SAS-Solartech's Motion. Kyocera joined SAS-Solartech's arguments that Commerce should not include these sales in its margin calculation. <u>See</u> Notice Statement SAS-Solartech's Rule 56.2 Mot. Mem. Supp., Feb. 27, 2018, ECF No. 50. Defendant filed a consolidated response to both Rule 56.2 motions. <u>See</u> Def.'s Resp. Pl.'s Mots. J. Agency R., June 19, 2018, ECF No. 62 ("Def.'s Br."). SolarWorld submitted a response brief to statements filed by SAS-Solartech. <u>See</u> Resp. Br. Def.-Intervenor SolarWorld, July 11, 2018, ECF No. 67. Consolidated Plaintiffs submitted a reply brief. <u>See</u> Reply Consol. Pls. SAS-Solartech Def.'s SolarWorld's Mem. Opp'n Consol. Pls.' Rule 56.2 Mot. J. Agency R., Aug. 7, 2018, ECF No. 72. SolarWorld also submitted a reply brief. <u>See</u> Reply Br. SolarWorld, Aug. 8, 2018, ECF No. 75 ("SolarWorld's Reply").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and Sections

516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C.

§§ 1516a(a)(2)(A)(i)(I) and (B)(iii).  The court shall hold unlawful any determination, finding, or

conclusion found to be unsupported by substantial evidence on the record, or otherwise not in

accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

### I.   SolarWorld's Rule 56.2 Motion for Judgment on the Agency Record

Plaintiff SolarWorld's Rule 56.2 motion for judgment on the agency record contests

Commerce's adjustments of Motech's and SAS-Solartech's reported costs instead of applying

adverse facts available to Motech and SAS-Solartech in the Final Results.  For the following

reasons, the court finds that Commerce properly adjusted both Motech's and SAS-Solartech's

costs.

### A.  Commerce's Cost Adjustments for Motech

Pursuant to the Tariff Act, Commerce has the authority to conduct antidumping duty

investigations to determine if a class or kind of foreign merchandise is being, or is likely to be,

sold in the United States at less than its fair value, and to impose antidumping duties if

appropriate.  Id. § 1673.  In order to calculate the dumping duty, Commerce compares the

foreign market value (the normal value) of the product to the United States price (the export

price or constructed export price).  See id.  If the United States price is greater than the normal

value, dumping has occurred.  See id.  In determining both the normal value and the United

States price of a product, Commerce makes adjustments to the costs that go into the calculation

of those prices to obtain comparable prices for goods sold in the foreign market and for export to

the United States.  See id. §§ 1677a(c), 1677b(a)(6).  The Tariff Act provides that "[c]osts shall

normally be calculated based on the records of the exporter or producer of the merchandise, if

such records are kept in accordance with the generally accepted accounting principles of the

exporting country . . . and reasonably reflect the costs associated with the production and sale of

the merchandise."  Id. § 1677b(f)(1)(A).  Commerce's practice in evaluating costs for non-prime

merchandise is to determine if that merchandise can be used in the same applications as prime

merchandise.  See Final IDM at 23.

   SolarWorld argues that Commerce's adjustments of Motech's reported per-unit costs are

not supported by substantial evidence because Commerce relied on Motech's assignment of

grades to its crystalline silicon photovoltaic products, but Motech failed to provide a complete

and accurate description of these grades.  SolarWorld's Br. 12.  The court disagrees.  In its

Supplemental Section D Questionnaire Response, Motech explained the difference between its

prime grade A merchandise, and grade B merchandise, stating that "Grade B cells have full

efficiency and electrical function.  They are distinguished from Grade A cells by certain

cosmetic defects," and "[b]ecause of these defects, Grade B cells are often sold to module

producers that do not care about these defects, generally in non-prime markets."  Motech

Supplemental Section D Questionnaire Response at 4, PD 241, bar code 3537552-01 (Jan. 18,

2017).  Motech reported that its grade B crystalline silicon photovoltaic products had the same

use as prime merchandise "in addition [to being] used in street lights, small modules or

calculators."  See id. (emphasis added).  Because both grades of crystalline silicon photovoltaic

products can be used in the same applications, Commerce adjusted Motech's grade B

merchandise to reflect the full value of prime merchandise.  The court concludes that

Commerce's adjustment is reasonable and supported by substantial evidence.

SolarWorld argues that Commerce's reliance on Motech's assignments of grades to its merchandise is unreasonable and unsupported by substantial evidence because Motech identified a number of product grades in its Initial Section B Questionnaire Response that were not in its Initial or Supplemental Section D Questionnaire Response. See SolarWorld's Br. 12–15. Commerce found in its Final Results that Motech's reporting was consistent because "[a]lthough additional grades are noted in [Motech's Initial Section B Questionnaire Response], these grades relate to the same below top-grade products (i.e., products with either cosmetic or electrical defects)." Final IDM at 36. The additional grades outlined in Motech's Initial Section B Questionnaire Response list defective crystalline silicon photovoltaic products by type of defect such as cosmetic, whereas the grades in Motech's Initial Section D Questionnaire Response combine merchandise with these types of defects. See Final IDM at 36 (citing Motech Sections B and C Questionnaire Response at Exhibit B-11, PD 134, bar code 3485696-02 (July 8, 2016), Motech Section D Questionnaire Response at D-25, PD 141, bar code 3487335-01 (July 14, 2016)). The difference in type of defect would not change the cost adjustments, which are based on the merchandise's end-use, and Commerce's reliance on Motech's grade reporting is therefore reasonable and supported by substantial evidence on the record.

### B. Commerce's Cost Adjustments for SAS-Solartech

SolarWorld argues that Commerce erred in reallocating SAS-Solartech's reported costs for certain non-prime merchandise in the Final Results because Commerce applied a flawed calculation of the total costs to assign to grade 4 crystalline silicon photovoltaic products. See SolarWorld's Reply 8. Specifically, SolarWorld contends that Commerce based the costs for grade 4 merchandise on the control numbers for which "no power output" was reported in the cost file and there is not a one-to-one correlation between code "04" and "no power output." See

id.  SolarWorld agrees that an adjustment needed to be made to SAS-Solartech's costs.  See Final

IDM at 22.  The fact that there is not a "one-to-one correlation" between grade 4 merchandise

and crystalline silicon photovoltaic products that had no power output is not enough to conclude

that Commerce's reallocation is unreasonable.  Even though merchandise with no power output

can be found under multiple codes and not just under code "04," Commerce's reallocation of the

costs of grade 4 crystalline silicon photovoltaic products based on control numbers is reasonable

because Commerce's analysis of grade 4 merchandise demonstrated that their market prices were

"considerably less than the full production costs that the company assigns to them in the normal

course of business."  Id. at 25.  Even though a "precise reallocation" is not possible, it is

reasonable for Commerce to reduce the costs for grade 4 crystalline silicon photovoltaic products

based on evidence on the record that the grade 4 merchandise could not be used for the same

applications as prime merchandise.  See id. at 24.  Commerce's reallocation is therefore

reasonable and supported by substantial evidence.

### C.  Commerce's Decisions Not to Apply AFA to Motech and SAS-Solartech

Section 776 of the Tariff Act provides that if necessary information is not available on

the record or if a respondent fails to provide such information by the deadline for submission of

the information or in the form and manner requested, then the agency shall use the facts

otherwise available in reaching its determination.  19 U.S.C. §§ 1677e(a)(1), (a)(2)(B).  If the

Department finds that an interested party has failed to cooperate by not acting to the best of its

ability to comply with a request for information from the agency, then the Department may use

an inference that is adverse to the interests of that party in selecting from among the facts

otherwise available.  Id. § 1677e(b)(1)(A).  Commerce may rely on information derived from the

petition, a final determination in the investigation, a previous administrative review, or any other

information placed on the record when making an adverse inference.  See id. § 1677e(b)(2); 19

C.F.R. § 351.308(c) (2015).  19 U.S.C. § 1677e grants the Department discretion to decide

whether to apply AFA in each case.  See 19 U.S.C. § 1677e.  When Commerce can

independently fill in gaps in the record, adverse inferences are not appropriate.  See Zhejiang

DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011).

SolarWorld argues that Commerce should have applied partial AFA to Motech because

Motech failed to provide a complete and accurate description of the grades it assigned to its cells,

and therefore failed to cooperate with Commerce.  See SolarWorld's Br. 2, 12.  SolarWorld

contends that "Motech clearly maintained clear and extensive information and data on its

products by grade, which it did not provide to the agency, thus failing to cooperate."  Id. at 17.

Because Commerce did not have this data, SolarWorld argues that Commerce's failure to apply

partial AFA is "unsupported by substantial evidence, arbitrary, and an abuse of discretion."  See

id. at 18.  In this case, Commerce was able to fill in the gaps regarding the different grades

Motech reported in its Initial Section B and Section D Questionnaire Responses.  See Final IDM

at 36.  Because Commerce found that the record data provided by Motech allowed Commerce to

reallocate costs, adverse inferences are not warranted.  The court concludes that substantial

evidence supports the Department's decision not to apply partial AFA to Motech.

SolarWorld argues that AFA should have been applied to SAS-Solartech's reported costs.

See SolarWorld's Br. 2–3.  As with Motech, Commerce determined in the review that SAS-

Solartech was "fully responsive to [Commerce's] supplemental questions with regard to non-

prime merchandise" and explained any "anomalies" in its reporting.  See Final IDM at 25.

Because SAS-Solartech complied with Commerce's requests, Commerce declined to apply AFA.

Id.  The court concludes that substantial evidence supports the Department's decision not to

apply AFA because SAS-Solartech complied fully with Commerce's requests.

## II.   SAS-Solartech's Rule 56.2 Motion for Judgment on the Agency Record

Consolidated Plaintiff SAS-Solartech's Rule 56.2 motion for judgment on the agency

record contests Commerce's decision to include in its margin calculations certain sales made by

SAS because the sales were destined for Mexico via transit through United States FTZs.  For the

following reasons, the court finds that Commerce's inclusion of certain SAS sales as destined for

the United States in its antidumping duty calculation is unreasonable and not supported by

substantial evidence.

## A.  Commerce's Inclusion of the Sales at Issue in its Dumping Calculation

The court shall hold unlawful any determination, finding, or conclusion found to be

unsupported by substantial evidence on the record, or otherwise not in accordance with the law.

19 U.S.C. § 1516a(b)(1)(B)(i).  The court must determine whether the evidence and reasonable

inferences from the record support Commerce's findings.  Daewoo Elecs. Co. v. Int'l Union, 6

F.3d 1511, 1520 (Fed. Cir. 1993) (citing Matsushita Elec. Indus. Co. v. United States, 750 F.2d

927, 933 (Fed. Cir. 1984)).  The court reviews whether Commerce has taken the record evidence

into account and provided an adequate explanation for its reasonable determination.  See Cleo

Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007).

SAS-Solartech argues that Commerce unreasonably ignored evidence establishing that

SAS knew at the time of sale that its merchandise entered United States FTZs in transit, but was

destined for sale in Mexico.  SAS-Solartech's Br. 3.  SAS-Solartech alleges that Commerce

unreasonably included the sales to Mexico in its United States price calculations, despite no

evidence on the record demonstrating that the merchandise actually entered the United States for

consumption.  Id. at 14–15.  SAS-Solartech claims also that Commerce's determination to base

export price on sales to a third country directly violated Commerce's statutory mandate.  See id.

at 17.

      SAS-Solartech argues that sufficient evidence demonstrates that SAS knew at the time of

sale that its merchandise was ultimately shipped to Mexico, including: (1) verbal instruction

from its customers that the final destination of the merchandise was Mexico; (2) SAS'

knowledge that its customers had manufacturing facilities in Mexico; (3) the sales documentation

generated at the time of sale listed "Mexico as the ultimate 'ship to' destination and a Mexican

entity as the 'notify' party, meaning that a Mexican entity was the intended recipient of the

merchandise;" and (4) the United States addresses on the sales documentation were of

"consignee freight forwarders that operated within approved" United States FTZs.  See SAS-

Solartech Br. 10; SAS-Solartech's Reply 5.  Defendant contends that Commerce need not take

this evidence into consideration because it is neither physical evidence nor contemporaneous,

and SAS obtained the sales documentation "after the fact."  See Def.'s Br. 18.  Commerce argues

also that the sales documentation only "relat[es] to a few of the sales at issue."  Id.

      The court notes that the four documents cited by SAS-Solartech are evidence on the

record.  In its Supplemental Section A Response, SAS writes that during the sales process its

"customers verbally advised SAS that the sales were ultimately destined for Mexico."  SAS'

Supplemental Section A Response at SA-3, PD 166, bar code 3497125-01 (Aug. 11, 2016).  SAS

states that it "knows that both customers had factories" in a non-United States country and that

its customers did not intend for the merchandise to enter into the United States customs territory.

See id. at SA-4.  Commerce acknowledged that "[t]he sales and shipping documentation at the

time of the sales indicate the names of Mexican entities to be notified."  Final IDM at 10–11

(emphasis added).  Commerce acknowledged also that the "shipping addresses are FTZ-designated addresses."  Id. at 10.  SAS is not able to provide all sales information because one of its customers filed for bankruptcy.  SAS' Supplemental Section A Response at SA-3–SA-4, PD 166, bar code 3497125-01 (Aug. 11, 2016).  Because evidence on the record establishes sales to customers in Mexico and demonstrates that the merchandise was shipped to United States FTZ addresses, with no actual United States customers identified and no evidence showing that merchandise entered the United States customs territory for sale, the court concludes that it is unreasonable for Commerce to have ignored the record evidence regarding SAS sales shipped through United States FTZs destined for sale in Mexico.  The court concludes that Commerce's decision to include certain SAS sales as sales to United States customers is unreasonable and not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the court concludes that:

1.  Commerce's adjustments of Motech's and SAS-Solartech's costs are proper;

2.  Commerce's decisions not to apply AFA against Motech and SAS-Solartech are proper; and

3.  Commerce's decision to include certain SAS sales as sales to United States customers is unreasonable and not supported by substantial evidence.

The court remands the Final Results for redetermination on the issue of United States sales consistent with this opinion.  Accordingly, it is hereby

**ORDERED** that Commerce shall file its remand redetermination on or before January 11, 2019; and it is further

**ORDERED** that Commerce shall file the administrative record on remand on or before January 24, 2019; and it is further

**ORDERED** that the Parties shall file any comments on the remand redetermination on or before February 11, 2019; and it is further

**ORDERED** that the Parties shall file replies to the comments on or before March 13, 2019; and it is further

**ORDERED** that the joint appendix shall be filed on or before March 27, 2019.


/s/ Jennifer Choe-Groves
 Jennifer Choe-Groves, Judge


Dated:   November 13, 2018
          New York, New York